Good afternoon, Charles Price on behalf of Wireless Buybacks. May it please the court, first wanted to address the issue raised by the court and requested supplemental briefing on, which is the issue of jurisdiction under 1291 and whether under Microsoft and Humbert, the Sixth Circuit's decision, it was a non-final order lacking jurisdiction under 1291. The reservation in the final judgment was simply a recognition that the damages figure was tied to the scope of liability under the court's summary judgment. Also, as the parties have both stated, the inclusion of the limiting language as permitted by law essentially renders the provision void such that there's no reservation outside of what would actually be permitted on remand in the event that the court does remand for further proceedings. In Humbert and Microsoft, the courts were primarily concerned with the end run around the limitations of interlocutory appeal versus the final appeal as of right under 1291. And here there is no end run. The parties did not seek, or Wireless Buybacks did not seek immediate appeal of the court's summary judgment on the partial summary judgment on liability. Mr. Price, I don't want to spend a lot of time on this because I know you want to get to the merits, but can we just simply read that sentence out of the stipulation? Absolutely. All right. Go ahead. Excellent. So the substance of this appeal is essentially whether Sprint customers own their phones or whether they merely believe that they own their phones. The question turns on a five-word provision in Sprint's Terms and Conditions. The five-word provision is on your account with us. So Sprint's Terms and Conditions prohibit resale of services. So there's only four defined terms in the Terms and Conditions. Sprint, you, devices, and services. And the Terms and Conditions twice prohibit resale of services. You may not in any manner resale the services to a third party. It does not, however, include a provision prohibiting resale of devices. The confusion arises because the definition of services includes at least some devices. Specifically, it includes devices on your account with us. And so the question is essentially meaning of on your account with us. There's only two possible interpretations. Wireless Buybacks' interpretation is that on your account with us means active on your account, such that devices on your account with us are the devices that are actively receiving services. So those are sort of inseparable. If you sell a phone that's actually active, it has services on it. So you can't resell an active Sprint phone without reselling Sprint services. Sprint's interpretation is simply that devices on your account with us means devices full stop, such that all devices are active. It includes all accessories, and so chargers, phone cases, but also clamshell broken phones that are in dust drawers, or that are in junk drawers collecting dust. Let me ask this question. When I first read this, when I read service, it begins by saying a Sprint-branded device on your account. And often the parties seem to sort of leave out the phrase Sprint-branded. But it's a Sprint-branded device on your account. And that makes sense because one of the claims that Sprint has raised in various times is a trademark claim. Because they claim that you're selling phones that have the Sprint brand on them, right? And if you go back in time, you used to get Blackberry, and you either had a little circle for AT&T or a little Sprint signal or whatever Verizon's was back in the day. It wrote Verizon, I think, on it. And so those were branded in the sense that they have the name of the carrier on them. But if you buy a phone today, at least an iPhone, it does not have any branding on it except Apple's. So those are Apple-branded devices. What I'm curious about is why, given the trademark claim in particular, why wouldn't we read this most naturally to apply only to Sprint-branded phones? So in other words, only phones that have a little, like, logo on them per their, you know, trademark claim later, right? So they made this trademark claim that people's phones, when they've got the trademark on it, if you're selling them, you're selling our trademark, and that's problematic for us for a number of reasons. But why wouldn't we say this is a Sprint-branded device is a device that has, like, you know, some sort of little picture that represents Sprint? So Sprint is the trademark claims have been abandoned. So the issue is... What does Sprint-branded mean? Well, the trademark claim, I get it's gone now, but it sort of explains what this provision meant, right? That, like, these are the Sprint phones that, like, actually have Sprint on them. The same way we talk about Sprint-branded service, right? Like, that's the service that Sprint's providing under its name. That all makes sense to me, and, you know, we talk about restraints on alienation and otherwise, like, that makes some sense. We're not going to talk much about it. Don't worry. But that makes sense to me to read it as a Sprint-branded phone, not an Apple-branded phone, right? And to read that word out of the provision seems wrong to me. So the definition includes any phone that we sell to you, that we provide to you, or that is active on your account with us, or that is active on your account with us? That's the definition of device. Right. Right? But device is further limited in Subsection 4 as a Sprint-branded device. I think it's for any products. We'd always, everyone had interpreted it as, like, because I believe if I'm Sprint, I would mention that the phones, at least when they're packaged, likely are going to have, the ones sold at the Sprint store, likely are going to have at least exterior packaging on the package. And so you concede that an Apple iPhone that doesn't have any Sprint information on the phone is a Sprint-branded device? It still falls within a device, yes. We concede that it's a Sprint. I understand it falls within a device, but you believe it's a Sprint-branded device? We would concede that it's a Sprint. We wouldn't are either all devices, including accessories, any phone that Sprint's ever provided or ever sold to a customer, most importantly the ones that are inactive, are prohibited from resale permanent. So are your phone cases in your courts. And the District Court, obviously, is not the first court to address this. So the first, this is one of dozens of cases that Sprint's filed across the country. The first to actually interpret it was Middleman in Kansas. And Chief Judge Martin, District of Kansas, initially interpreted it on 12C as permitting resale of inactive devices. Sprint moved for reconsideration, and not only did the court grant reconsideration, but Chief Judge Martin actually held that it unambiguously permits or prohibits resale of inactive devices. So then appealed to the Tenth Circuit. The Tenth Circuit reviewed de novo, and in a published opinion, unanimously held at least that it's ambiguous. And the reason, or the clearest reason for ambiguity is essentially that Sprint's definition or Sprint's formulation appears throughout the terms and conditions. Obviously, devices without any limiting language appears throughout the terms and conditions. And wireless's, or Middleman and their, definition also appears at least once, and it's previous to that, previous in that sentence, where it says device is active on your account list. And since Sprint showed the third formulation in between the two, effectively, that it was for the jury to determine what the actual meaning of the phrase was. So your position is it's an ambiguous term, and under Maryland law, the jury ought to make that decision. Absolutely. Especially because, in this case, the relevant question is, could a reasonable jury plausibly interpret the provision to have a different meaning than what Sprint interpreted it to have? And here, we actually have a jury that unanimously held and unanimously interpreted the language to only prohibit resale of active phones. On remand, there was a three-day jury trial. The jury unanimously held that the terms and conditions permit resale of inactive phones. And Sprint challenged that, asked for a new trial, and Chief Judge Martin, who was none other than having a case for nominal damages of $1 appealed, and not a fan of middleman, even on remand, upheld it as a reasonable interpretation that the jury could reasonably interpret the provision to permit resale. So that was upheld, and we've raised that before with the district court. Chief Judge Blake, however, in our case, held that it unanimously or unambiguously prohibits resale of all devices, including inactive phones. And she actually relied entirely on an unrelated provision that actually appears in a separate document. Terms and conditions includes a universe of documents, or a universe of agreements between Sprint and the customer, and it's the nature of our service provision. And so Sprint has a nature of our service that says, our rate plans and services and customer devices are not for resale. Customer devices, however, is not defined. It's an undefined term. And more importantly, the district court ignored that. That is obviously for Fair Labor Standards Act, not for resale for decades. For 70 years, it's been a term of art for FLSA, and it's so that you can get the retail exemption for overtime. And also that it's stated passively. It doesn't even mention the customer, much less support to bind them. And one thing that's clear from Sprint's terms and conditions and also lease agreement, finance agreement, is that Sprint knows full well how to prohibit customers from doing something when they want to. They don't mince words. If they say you are not permitted to do something, they say you are not permitted to do this. You may not do this. Also ignored that it conflicts with the lease and finance agreements. The lease and finance agreements comply or record or comport with the restraints on alienation issue, which is that if you hold title to a good, you're permitted to resell that good. So if a would-be owner wants to prohibit resale, they need to make it a valid lease or license, or if they retain a security interest. That's essentially the only conditional sale that's permitted under the UCC. And that's the issue that you don't need to address if you at least find it ambiguous and remand for further proceedings. But it does weigh in favor of at least wireless's interpretation being one reasonable interpretation, which is that for centuries the law has prohibited owners of goods from prohibiting resale or I guess from releasing goods into the stream of commerce but permanently tethered to the first buyer. And they do that so that they can limit competition from the secondary market for their goods. They've tried all manner of mechanisms to do that, the first sale rule, patent exhaustion. All of those are essentially just reformulations of the rule against restraints on alienation. Would you argue below that Sprint's interpretation was absurd and untenable? Yes. What was that? Sprint's argument is absurd in that it's prohibiting resale permanently of your phone boards and your unused phones that are in junk drawers, which then defining those as services was absurd, essentially, especially considering the regular terms. Mr. Price, before you sit down, I just have a question, a procedural question, about how this case would resolve itself if we were to agree with you. Let's say the case goes back for jury determination on the question of the contract interpretation. If that goes against you, then essentially at that point there's nothing else to decide, right, because you've stipulated the damages. Am I understanding that correctly? We also argued that reversal is appropriate on the scope of liability, that the district court said not only does it prohibit resale of inactive devices, but that wireless is liable for all of the phones that Sprint wants to claim damages for, the vast majority of which we didn't even purchase from Sprint customers. They were purchased from other companies. But that seems exactly the stipulation problem, right? So your view is that if we agree with you and say the jury has to determine, and the jury determines all three, what I think of as three categories of phones, that in that scenario you could litigate whether you're responsible for all the phones that are in category three, the leased phones or the sold outright phones or the installment plan phones. You could relitigate the number of phones that were involved in that group. Correct, because that's the scope of liability and the fact of injury, which the court determined that we were not permitted to contest for additional phones. So the damages figure was basically a calculation. All right, so there's this many phones, and the per-phone damages are going to be X. But the actual fact of liability and our ability to contest that for more than just the phones, because the phones hadn't been identified when Sprint moved for summary judgment. Right, but you stipulated to it. That's the point of the stipulation. Either you're bound. I mean, if it went back and there's a jury trial. So maybe there's not your stipulation. So if it goes back, there's a jury trial, and the jury agrees with the district court that you can't resell the phones. Your position is that the reservation here allows you to dispute the damages number. No, no, no, no.  So the district court's finding on liability effectively allowed Sprint to treat it almost. Sprint's claim isn't a single, indivisible claim for one interference with a single contract, right? It covers thousands of customers, and the district court held that potentially once the district court found us liable, that anything beyond that for one phone or for a handful of phones, that anything beyond that was a question of damages instead of liability. So that said, that's the second half of our appeal, which is on awarding summary judgment on liability for all of the phones. Yeah, I'm not sure that you responded to the question with respect to the scope of the stipulation. It seems to me that having stipulated to the amount of damages, that it's not necessary then for Sprint to show that each and every customer's contract was breached. That was the substance of our appeal. I mean, liability was on appeals. The summary judgment was granted for liability as a blanket finding. Damages were only stipulated to as the actual, the dollar thing. But the fact that Sprint should have to show that we interfered with customer A, customer B, customer, was decided by summary judgment. So you're asking us to reverse your own stipulation? Not to reverse the stipulation, to reverse the district court's order on liability, finding that we were liable for actual interference. I mean, the district court actually looked at interference, looked at at least one customer for Breed and Mechanical, and we appealed that finding that we were liable for interference. So the damages stipulation was just the dollar figure for the blanket finding of liability. Let me just ask the question maybe as clearly as I can. I hope, because Diaz will probably do it better. But if the jury, if we send it back, if the jury finds exactly as the district court did, that is that you are liable for all three categories, the leased phones, installment phones, and outright phones. You understand what I'm saying about those three categories? And they find that all three categories are prohibited from resale, hypothetically. Do you agree that in that scenario the amount of damages is predetermined to be this $26.8 million? If this court doesn't reverse the scope of liability, the fact that Sprint doesn't have to show actual interference per customer, which is the fourth issue presented. Yeah, but the question is, has that been now forfeited away by virtue of the stipulation? I don't believe so, because it's fact of liability, which is similar to class certification where you have to be able to show fact of damages. Thank you, Mr. Price. Mr. Heydrich. Good morning, Your Honors. Jay Heydrich on behalf of Sprint. With me is my law partner, Russell Jones, Jr. I appreciate the opportunity to be here today. I'd like to begin by taking on your question, Judge Diaz and Judge Richardson, as to the stipulation that was made. It is our position absolutely that damages have been stipulated to and would be found should you remand it back. And that damage number would stick. But I also want to address a practical question. When would it not stick? Give me the scenario. If we send it back, goes to a jury, what outcome would lead to a different number? I mean, I get the idea that you all just want us to say the footnote doesn't exist. But give me a hypothetical where, at least some hypothetical, that I could say, well, you know, the damages number wouldn't stick in this scenario under operation of law. I can't give you one, Your Honor. I've tried to consider that when the court asked for a supplemental briefing as to what are the possible scenarios as to how this would shake out to where we would have peaceful litigation. Let me pose one for you. What happens if they come back, if the jury came back and said, totally ambiguous, we got with respect to phones purchased outright, and we find that those can be sold, but we find these installment contract and lease phones, that those could not be sold. In that scenario, would the damages be determined? I would agree. I would say they would, Your Honor, because, again, it's an undifferentiated damage. That wireless buyback stipulated to. They had the opportunity to sort through at the trial phase before entering into the stipulation to go through and say, we think that the damage number that we're going to stipulate to should be X amount of dollars for this category of phones, X amount of dollars for this category of phones, X amount of dollars for this category of phones. And they didn't do that. They stipulated to an undifferentiated damage sum. But there is one issue tied into that. If I could get to that, I think it's important overall for the court to understand as to what this appeal is about. The summary judgment dealt with four types of phones. The only category of phones that wireless buyback says is part of this appeal is active phones on a customer's account. Inactive phones. Inactive phones, yeah. That's on page 19. They say this appeal is not active phones, not leased phones, not financed phones. This appeal concerns only inactive phones that Sprint, and they make some allegations that we disagree with, but this appeal only deals with inactive phones. So to your hypothetical judge. You lost at trial on inactive phones. This is the point. If you lose at trial on inactive phones, your position is they're stuck with the $26.8 million damage number. Let me think. Make sure I understand your question. Right. So in other words, if the jury finds that inactive phones that were purchased outright are permitted to be sold willy-nilly, as they wish, right? So that category of phones, right, inactive, purchased outright. I'm not talking about lease. I'm not talking about installment. I'm not talking about active, right? Inactive, purchased outright. If the jury found that the contract permitted the sale of those phones, right, so that entire category of phones is now, there can be no tortious interference on those phones, based on the lack of a restraint on sale. Correct. I'm with you. So in that scenario, do you believe the damages would remain $26.8, or would they be allowed to relitigate the damages in that context, because the scope of liability has fundamentally changed, right? It went from three categories of phones to two categories of phones, and so while their stipulation existed, it doesn't apply given changed circumstances. I would agree in that distinct hypothetical, Your Honor, that that could be the case, yes. No, no, I need to know more than could that be the case. I want to know whether you agree with that, because this is the interpretation of footnote that we're trying to figure out, and if everybody agrees on the interpretation, that's one thing. But if you think it means one thing and your colleague thinks it means another, then that means we've got to figure out what it means. So I want to know, does your client agree in the hypothetical I've given that the damages calculation would be open to litigation because the scope of liability has changed? But there would still be liability for the leased phones and for the finance phones. But in theory, the argument would be, but we don't know how much that is, right? Because the calculation, the stipulation was if it's all three categories, right? Leased, installment, inactive, purchased outright, it's really more than three categories, I'm just trying to simplify it just a little bit, right? But the 26.8 was for all three categories. If the jury finds one of those categories wireless buybacks is not liable for, then there would be a discussion and it would be open to litigation as to what the damages were on the two categories that were found to be tortious interference. I would disagree with that, because of the undifferentiated damage sum that they stipulated. Because the stipulation was for an undifferentiated number for all those categories of phones. But then the finding would be that they're not liable for all those categories of phones. That would seem like the circumstance where under law, you stipulate given certain facts or certain information. But if that information changes, the stipulation doesn't hold anymore. But you disagree. You think the damages is set. I think that that is not only set, but I think that that's another basis for the court to affirm here. Then what possibly did the footnote mean? So that's a theory that the footnote doesn't mean much, but maybe means something. It reserves what the law would have otherwise provided. And while that's probably unnecessary, at least it says something. What you're telling me is that when it says it reserves the right to challenge damages, what it meant is it reserves no right whatsoever under any circumstance to challenge damages. It means the opposite of what it says. No, Your Honor. I'm telling you that if we were going to brief the issue and we were going to say whether or not, we would have to look at it and say whether or not wireless buybacks has the ability under law to reach, to argue and reach the point that you're talking about. If it does, it does. The footnote. Well, that's what I'm asking you. I'm asking you whether it does. I have not briefed the issue, Your Honor, as to whether or not it does. Our position would be that it's undifferentiated. Let's do this. Let's go ahead and proceed to the merits. No, that's fine. This is important. I'm not suggesting. I don't think we can resolve this in ten minutes. So we'll consider whether or not to allow supplemental briefing on this issue that has come up. But go ahead and turn your attention to the merits. Yeah. On the merits, Your Honor, going back to the three different categories of phones, I believe that would be another basis to affirm, in that wireless buybacks can't show that any dollar amount was made to the, was awarded for its inactive phones, which is the only basis of this appeal here. It's not contesting summary judgment as to those other categories of phones. But we'll move on from that as well. Addressing the middleman, this raises an interesting issue, because the middleman is unique in that, and different from this case, because middleman was a party to the contract that was at issue before the case. And one thing that wireless buybacks does in this case is that it tries to argue this case as a breach of contract case. So it is arguing that the contract is ambiguous. But wireless buybacks is not a party to the contracts that we're saying the customer's breached. So, which raises an interesting procedural question as well, Judge Floyd, about if it's remained for the jury to find that it's ambiguous. If it is remained and the jury finds ambiguous, the jury's going to determine what is the intent of the parties. Wireless buybacks is not a party to any of these contracts. The only evidence before the record, the only evidence that's presented, that has been presented, is that Sprint's interpretation of the contract that customers are prohibited from reselling. There's no evidence at all in the record anywhere that any customer has come forward and said, I believe that my contract with Sprint is ambiguous. That was the case in the middleman, because middleman was the party to the contract. In theory, that's the question for the jury to decide. So you all would get the chance to ask customers, did you believe you could resell your phone? Yeah, in theory, yes, Your Honor. But the point is that wireless buybacks makes ambiguous arguments and is arguing this as if it is a party to the contract, and this is a breach of contract case, when it's not. But you agree that tortious interference claim depends upon the contract prohibiting the sale of phones? A tortious interference with contract claim does. In this, the claim that we're talking about, right? I'm going to talk about it generically. No, because we moved that, and that's in our briefing, Your Honor, is that our movement for summary judgment was for both the larger tortious interference claim and for tortious interference with contract. And in our briefing, we pointed out why this court could affirm as well. But the district court found it on the contract issue. Do you think we should reach out and decide this other issue of prospective economic relations or whatnot?  And we briefed it, and we raised it before Judge Blake at summary judgment. She chose not to address the larger tortious interference claim. Can I – and I'm sorry to – and I will yield at any time. If I accept your interpretation, right, that a device on the account is any cell phone that you provided, why in the world when I look at your lease agreement, and I'm just reading it off of JA898, and it's from your documents, I'll read it to you, it's not that complicated, right, which would be a device on the account, right? You'd agree a lease device is a device on the account under your interpretation, just like an inactive phone purchased outright is on the account? Yes. Yes. Yes is the answer to that. So it says in the lease agreement, right, it says, you may not sell or otherwise transfer the phone to a third party unless and until you exercise your purchase option, right? So which suggests to me, trying to read these things in context, that if you exercise the purchase option on a lease phone, you can then sell it to anybody you want to. The same idea on the installment billing contracts, right, where it says, you know, just that you agree while subject to our security interests, you will not sell the phone. Both of those provisions would be unnecessary and duplicative if I accept your reading over here that it's a device on the account, right? And so these seem to suggest that the natural reading of device on account does not include every single phone that has ever been transferred. Otherwise, you wouldn't say, particularly with respect to leased phones, that you cannot sell it until you exercise your purchase option. And that means you plainly can sell it once you exercise the purchase option. Yes, Your Honor. I think that that goes to the meaning of what Mr. Price said was on your account with us. So he mentioned, you know, chargers, things like that. The limiting language of on your account with us, if a phone is identified on your account with us, then the resale bar applies. So if a phone is in a drawer, to take Mr. Price's example, and that phone is no longer on Sprint's account with Sprint, they're free to do with that what they want. And let me give you the real-world example as to how this would apply, particularly with inactive and active. But that doesn't make sense here, right, because a leased phone, the phone I'm talking about, right, that's on your account. You exercise a purchase option, but you now own the phone, right? Now it's just like an outright purchase. And it says that you can sell that phone. I mean, that's just your language, right? So it says you can't sell it until you exercise the purchase agreement, which means that when you exercise the purchase agreement, you can then sell it. Yes. Which is just inconsistent with the other provision. I mean, this goes to this idea of ambiguity, right? I don't understand how you're saying, no, you can't sell. Your reading, as it is, says you can't sell it over here. But then the lease agreement says, oh, yeah, yeah, you can sell. It says both things with respect to a leased phone. Our reading says that you can't sell it if it's on your account with us, and I agree there is conflict between those two agreements, Your Honor. So tell me what you mean by own your account. So that leased phone, if I disconnect it, so I get a new phone. I get a new leased phone, but I've exercised my purchase right on the old phone. I get a new phone. I'm now using that to talk on Sprint. I can go sell that one, right, now that I've purchased it? I think the issue is we're conflating the terms of the two agreements. I understand, but I'm asking the question of on a leased phone, I exercise the purchase agreement. I get a new phone, and I connect it, you know, because I'm doing another version. And I say I want to go sell this phone to Judge Diaz, right? He likes old phones, so I'm going to give him my old phone for a low price, right? I've exercised my purchase option, and so this tells me I can sell it. On the lease, yes. If you've accessed your lease, the lease agreement says the lease agreement. Yes, Your Honor. Okay. And I keep going back to the thing. Can I ask you a question? Yes, please. You said something a few moments ago that seemed to be inconsistent with the scope of Judge Blake's order. I mean, she found that all phones, inactive, active, in the drawer, it doesn't matter, were covered by the claim for tortuous interference. But you seem to be suggesting that perhaps that was a little bit too broad. Did you say that? I'm saying, Your Honor, that is what her order said, that all Sprint phones. But that's not what you just said. You were talking to Judge Blake. On your account with us, yes. And that is the limiting language. And what does that mean? And that's what Wireless 5X is arguing is that it means active phones on your account with us. And our position is on your account with us means on your account with us. In the context of Judge Blake's order where she said all Sprint phones, I think that that's reading a little too broad. I think that she was talking about addressing the party's argument of active versus inactive. And if you read that sentence in context, that comment in context, she is addressing it in the context of the inactive versus active and not meaning phones in a drawer, things like that. So when she made that comment, Your Honor, I don't believe she was meaning that a phone from 1984 that's sitting in a drawer can't be sold anymore. She was addressing the party's arguments of the active versus inactive argument. Why is a phone in a drawer from 1980, maybe not 1984, let's go 2004, why is that any different from a phone sitting in a drawer that's in a brand-new box that's never been connected to the Sprint network? Why is it any more or less on your account? The one from 2004, I bought it from Sprint. They sent me an invoice. I paid the invoice. But it's not connected to the network. Why does it own your account at all? Because that goes to the practicality of how these phones, and I'm glad you raised that example, with an inactive phone that hasn't been used at all. If I walk into a Sprint store and I buy a phone and I activate it right there, that phone is active on an account. I think everyone would agree with that. I think a lot of flybacks would agree with that. The issue becomes, and this is what this case is about, with a tortious interference with a contract, is when a customer orders a phone online, for example, and says, I'm going to get this phone for 99 cents or whatever the subsidized rate is, ship it to me. It hasn't been activated yet. It's an inactive phone. But it's on that customer's account. So wireless flybacks reading would allow that customer then to go resell that phone without having to, and then not comply with the terms and conditions, or that would be a breach of the terms and conditions. Why is it any more on my account, the phone I bought in 2019, but haven't connected, than the one I bought in 2004 that I disconnected? I mean, both of them are in some of the broadest sense of the word. I bought them all from Sprint. I mean, they may be in the record that I at one point bought them. I thought your argument was good when you said all these phones. You can't sell the one from 2004 or 2019. But I don't understand how you can read the language, just the strict language, to say the 2019 phone is on my account, but the one from 2004 is not, even though they're both bought, they're both invoiced, they're both in your computer system is showing that I bought them from you. If they're both on account, then they would be on – I mean, that's – I'd agree with that, Your Honor. If they're both on your account with us, that's where I'm struggling with your question, is the one from 2004, is it still listed in the Sprint? If we're going to assume that that's still listed on your account and that's in the Sprint system, if that's on your account, then the resale bar would have been high. I assume you, like every other company, keeps every bit of information about me that you can, right? So you know every phone I've ever bought from you, right? It's listed in the – it really can't possibly be that this comes down to, like, your record retention issue, right? I – the contract says that you can't resale on account with us. If it's on your account, then the resale bar would apply, Your Honor. One thing that – addressing the ambiguity of it that I would like to point the Court's attention to, on page 26 of our brief and page 27, Mr. Price talked about the combination of the definitions of services and devices. And what we've done on page 26 and 27 is set forth the combination of those two definitions that if a customer were to read the contract at issue, that clearly say you cannot resale Sprint phones and clearly set forth the terms that would do that, that would prevent that. The issue before the Court is whether or not this is an ambiguous term. And we believe that the contract clearly says that when read as a whole, not when trying to pull out different sections of it and trying to twist different terms at a reasonable consumer, the only instruction that a consumer would take in reading this as a whole is that they are barred from reselling phones that are on their Sprint account. Thank you, Mr. Heiderich. Mr. Price, you've reserved some time. Thank you, Your Honor. I believe you were correct that essentially they just conceded the point by saying you're free to do what you want with those phones, referring to phones that have been taken off the account. And actually this was addressed to an extent by Chief Judge Martin when Sprint moved for preliminary injunction in Middleman the first time, which was when Judge Martin just sort of took a very matter-of-fact analysis to this and stopped Sprint's counsel and said, wait a second, so if I get a new phone and I keep using my old phone, how are you guys injured? To which Sprint had no answer. Is there any evidence in the record that Sprint does not enforce this provision against those old phones? Sprint's never enforced the provision against any customers. They've just sued resellers and the management company. I understand, but what I'm saying is against whoever it is, have they ever enforced it with respect to, let me say with respect to instead of against, with respect to old phones? I believe all of the cases that Sprint has filed are with respect to old phones, or at least with respect to used phones. Old phones, I mean, so not inactive phones, but phones that used to be used and were taken off of the account. That's what inactive, that's what the vast majority of inactive phones, is what they are. So Sprint conflates the issue about minimum term agreements or the 12, 24-month agreements, which is not mentioned in the definitions. It's not mentioned in the resale prohibition, and it's not actually tied to the resale prohibition. The minimum service terms are the early termination fee. So that's what Sprint's protected by for those. And Sprint's agreement is you will pay for service for 24 months, and I'll give you this discount on the phone. You don't have to, you don't give the phone back if you breach the agreement. You have to pay the early termination fee. One issue that Sprint raised is the issue of active phones, leased phones, and the financed phones, assuming that those are in this case. There's no evidence below that there are any financed phones, any leased phones, or any active phones that were at issue below. The lease and finance agreements were actually introduced by Sprint years after they filed this case. So they filed this case based entirely on these inactive phones, because that was the only way that you could buy them. You could get Sprint phones, essentially, at that time. You could buy it outright, or you could get the contract phone, where you agree to a minimum service agreement. Two years into the agreement, Sprint introduced the lease and finance agreements, did not amend their complaint to include violations of the lease and finance agreements. So it's only the terms and conditions that are potentially at issue. Where did you argue below that the district court got the scope of liability wrong? Well, below we argued that the only thing we moved for reconsideration under was for the finding about the resale prohibition. We didn't move for reconsideration, but we argued that Sprint had not showed actual interference, they hadn't showed knowledge of the contract for all of the phones, and that the only sort of exemplar that they used, the customer Tiffany Kennedy and Breeden Mechanical, the evidence actually showed that she reached out to Wireless Buybacks after they bought one phone on eBay. She reached out saying, I've got additional phones, there's no contract, did not mention her employer. Well, the rest of the question would be, as opposed to merely stipulating to the meaning of the district court's order, correct. So we were going to brief the question of whether the district court had found, or whether the district court's finding of liability applied to all phones, or whether Sprint would have to actually show interference per customer. Raise that on a preliminary conference with the district court who commented that she didn't see the need for it and conveyed essentially her interpretation or belief that it was not actually a, that there was no issue and that Sprint wasn't going to have to interpret, that it was not going to have to show that. And so we stipulated to the meaning of her holding, that she had held that all Sprint phones were covered by it and that any issue about the other phones would be a question of damages. What's the relationship between that argument and the scope of liability? So the scope of liability is the fact that Sprint showed interference. So that they showed interference for breed and mechanical, and that that prohibited us from showing, from contesting interference with any of the other phones or any of the other customers. And that the damages or the fact of injury, which is the big issue with class certification as of late, is that she said, well, Sprint's injured when customers resell their phones because it interferes with Sprint's desire to get customers onto new devices and that they may blame Sprint if something is unused, which we believe was purely speculative, not an actual injury. And that we should have been able to contest the fact of injury for all of the phones that Sprint was claiming, for which Sprint was claiming intentional interference. And so, again, actually, if it's remanded with instructions to go to a jury, the first thing would presumably be, first with consideration, of whether the court can resolve ambiguity with reference to extrinsic evidence, which the court's done in a number of the other cases of ambiguity that I've seen. And one of the pieces of extrinsic evidence is that after briefing was closed and summary judgment was finished, Sprint actually revised for the first time in years its terms and conditions. And when they did so, they provided the sort of plain English version next to all of the contractual terms. And in the plain English version, Sprint essentially refutes their position. It says, you mean you, Sprint means Sprint, devices mean your phone or tablet, and services mean our great plans and services. So presumably the district court will be able to rely on that extrinsic evidence to resolve the ambiguity to essentially say that phones, that devices are phones, services are services, which would include devices with services because those actually contain services. But services does not mean all devices and all services. Do you have anything further, Mr. Price? No, Your Honor. Thank you very much for your argument. Thank you.
judges: Albert Diaz, Henry F. Floyd, Julius N. Richardson